IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNE BERECKIS,                          )
                                        )   No. 15 C 7688
            Plaintiff,                  )
                                        )
    v.                                  )
                                        )   Magistrate Judge Sidney I. Schenkier
CAROLYN W. COLVIN, Acting               )
Commissioner of the U.S. Social         )
Security Administration,                )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Anne Bereckis ("plaintiff" or "Ms. Bereckis") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") (doc. # 16: Pl.'s Mem. in Support of Sum. J.). The Commissioner has filed her own motion seeking affirmance of the decision denying benefits (doc. # 23: Def.'s Mot. for Sum. J.). For the following reasons, Ms. Bereckis' motion for remand is granted and the Commissioner's motion is denied.

I.

On March 7, 2013, Plaintiff filed a claim for DIB, claiming that she became disabled on February 15, 2013 because of pseudomeningocele,[2] sacral cysts, sacral erosion, coccydynia,[3]

---

[1] On September 14, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 7).

[2] A pseudomeningocele is an abnormal collection of cerebrospinal fluid (CSF) that accumulates in the brain or spinal cord, sometimes as a result of spinal surgery. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3745699/, (visited on December 9, 2016).

[3] Coccydynia is pain in the coccyx or tailbone. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3963058/, (visited on December 9, 2016).

pelvic floor dysfunction, intermittent blurred vision, degenerative disk disease, status post spinal surgery, left hemifacial spasm, blepharospasm,[4] anxiety and depression (R. 39, 185, 212). Her claim was denied initially on August 9, 2013 and on appeal on March 24, 2014 (R. 49, 63). Ms. Bereckis, represented by counsel, participated in a hearing before an Administrative Law Judge ("ALJ") on November 19, 2014; a vocational expert ("VE") also testified (R. 16). On March 25, 2015, the ALJ issued an opinion finding that plaintiff was not disabled (R. 81). The Appeals Council upheld the ALJ's determination, making it the final opinion of the Commission (R.1-3). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

Claimant makes four arguments in favor of remand: (1) the ALJ did not identify an evidentiary basis for her residual functional capacity ("RFC") determination; (2) the ALJ wrongfully substituted her opinion for the medical opinion of the state agency psychological consultant; (3) the Appeals Council erred in failing to remand the case based on new and material evidence submitted after the ALJ's decision; and (4) the ALJ's credibility determination was flawed. Because we remand on the ground that the ALJ did not provide an adequate basis for her RFC, we will set forth only that evidence of record that is relevant to that claim.

Ms. Bereckis is a college graduate who has an MBA in Information Systems (R. 19). At the time of her alleged onset date, Ms. Bereckis worked as a data processing manager, a sedentary job (R. 35, 213), and had been telecommuting from home for at least two years (R. 228). Ms. Berkeckis quit her job in February 2013, citing severe back pain as the reason (R. 20).

---

[4] Blepharospasm is an abnormal, involuntary blinking or spasm of the eyelids. https://nei.nih.gov/health/blepha/blepharospasm (visited on December 12, 2016).

Other than her alleged mental health impairments, the majority of Ms. Bereckis' health issues – including the one implicated by the ALJ's allegedly faulty RFC – concern problems with her back and spine. Ms. Bereckis has had three spinal surgeries, two in 2005 to repair a pseudomeningocele and one in 2010 to fuse her spine in the cervical (C-5 and C-6) region (R. 855-56). The medical record shows that between 2005 and 2013, Ms. Bereckis regularly complained of lumbar, cervical and sacral pain at medical appointments with her spine surgeon, Edward Mkrdichian, M.D., and her internist, David Labotka, M.D. (R. 341, 355, 369, 402, 405, 409, 856, 862, 867, 874). In 2011, Ms. Bereckis began complaining to her doctors that her back and sacral pain was so severe that she was no longer able to sit long enough to do her job (R. 20, 228, 341, 461).[5] Because of the pain she experienced from sitting, Ms. Bereckis stood during parts of her hearing, during some of her visits to her primary care doctor, and during her interview with the DDS field office she visited to apply for benefits (R. 22, 209, 439). At the hearing, Ms. Bereckis testified that she lies down for one to two hours every afternoon to get relief from back pain, and that after her 2010 back surgery, she initially worked from a supine position with a tilted computer desk, but that set-up caused other problems with her back and so she had to discontinue it (R. 24, 29).

The medical evidence reflects Ms. Bereckis' complaints about several different types of back pain, apparently stemming from different causes. Specifically, in addition to complaining of sacral, lumbar and sometimes cervical pain caused by prolonged sitting and/or working at her computer, Ms. Bereckis also reported to Dr. Labotka and Dr. Mkrdichian at other appointments that she had pain in her upper back, shoulders, and neck (R. 402, 872, 878). At times, these

---

[5] Treatment notes indicate that Ms. Bereckis complained of sacral and cervical pain resulting from any activity that required sitting, including sitting at a computer to do her job, sitting on the edge of her bed, and sitting in a dentist's chair (R. 451, 460).

3

various incidences of pain followed some sort of back yard physical activity such as raking leaves, replanting, hedge trimming, or sanding outdoor chairs (R. 26, 878).

After Ms. Bereckis' final spinal surgery in 2010, both Dr. Mkrdichian and Dr. Labotka recommended conservative treatment for her pain, consisting primarily of prescription pain medication (R. 861-62). Ms. Bereckis underwent an MRI in 2013 which Dr. Mkrdichian compared to her 2010 MRI, finding that the 2013 MRI showed mild degenerative changes from 2010, but that overall, it was grossly within normal limits (*Id.*). A treatment note from Dr. Mkrdichian from April 2013 stated that, although Ms. Bereckis' recent MRI revealed several sacral cysts, he did not recommend surgery at that time (R. 856).[6]

### III.

The ALJ found that Ms. Bereckis had the following severe impairments: status post cervical spine surgery (2010), pseudomengocele and surgery of the lumbar spine in 2005 and cyst of lumbar spine, and hypertension with coronary artery disease (R. 70). In her opinion, which followed the familiar five step process for evaluating disability, the ALJ determined that Ms. Bereckis had an RFC to perform sedentary work, except that she could never climb ladders, ropes or scaffolding and no more than occasional climbing of ramps and stairs, balancing, stooping, bending, twisting, kneeling, crouching or crawling.[7] The ALJ also added a "sit/stand" option to her RFC determination, finding that Ms. Bereckis must be allowed to stand for 1-2 minutes after sitting for 45 minutes. Finally, Ms. Bereckis had to avoid concentrated exposure to

---

[6] Subsequent to the ALJ's opinion, Dr. Mkrdichian submitted a letter to the Appeals Council explaining that his recommendation of conservative treatment for Ms. Bereckis' back pain was not an indication that her pain was not severe or that she was otherwise able to work, but instead that surgery would not alleviate her pain from her sacral cyst, which the doctor described as "a very significant problem" and a "significant complicated arachnoid sacral cyst" (R. 1094). The Appeals Council reviewed Dr. Mkrdichian's letter but concluded it did not justify changing the ALJ's opinion (R. 2, 6).

[7] According to the Social Security Administration, a sedentary job entails sitting for approximately six hours in an eight hour work day and standing and/or walking for no more than two hours in an eight hour work day. https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html (visited on January 9, 2017).

4

work hazards, such as unprotected heights and dangerous moving machinery, and avoid concentrated exposure to uneven surfaces (R. 75).

In making her RFC determination, the ALJ explained that she was limiting Ms. Bereckis to sedentary work because Ms. Bereckis consistently reported feeling pain after physical activity such as yardwork and gardening (R. 79). The ALJ gave "good weight" to the opinions of the two non-examining DDS doctors, Drs. Wabner and Kim, who reviewed the medical record (R. 80). Specifically, Dr. Wabner opined that Ms. Bereckis could occasionally lift up to ten pounds, could stand and/or walk for two hours in an eight hour day and sit with normal breaks for six hours in an eight hour day (R. 45-46). On reconsideration, Dr. Kim assessed Ms. Bereckis as having the same RFC, including the ability to stand and/or walk for two hours and sit for six hours in an eight hour day (R. 59). In his RFC, Dr. Kim answered "yes" to the question of whether there was a source opinion that was more restrictive than the one he assessed, but did not complete the portion of the form that asked how the two RFCs differed; he also did not identify the source of the conflicting RFC, but we assume he was referring to the opinion of Dr. Labotka, as his is the only other medical opinion in the record that opines as to Ms. Bereckis' RFC (R. 61).

In crediting the opinions of the non-treating doctors, the ALJ gave "little weight" to the RFC opinion of Dr. Labotka, who opined on March 7, 2014 that Ms. Bereckis was able to stand or walk for one to two hours and sit for less than one hour in an eight hour work day, and to lift no more than five pounds occasionally (R. 80, 107-110). In explaining her rejection of Dr. Labotka's opinion, the ALJ stated that "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. Treatment has consisted of medication. There is no evidence of steroid injection or surgery" (R. 80). The ALJ also noted that Dr. Labotka opined that Ms. Bereckis could sit for less

5

than an hour in an eight hour work day, but that claimant herself testified that she could sit for up to one hour (*Id.*). Finally, the ALJ stated that Dr. Labotka's RFC was inconsistent not only with Ms. Bereckis' yard work and other activities of daily living, but also with Ms. Bereckis' ability to live independently (*Id.*). In crediting the two DDS doctors instead, the ALJ merely stated that their RFC opinions were "consistent with the medical record" (*Id.*).[8]

## IV.

We review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

We remand because the ALJ created an RFC for which she identifies no support, namely, her assessment that Ms. Bereckis would be able to perform sedentary work as long as she had the option to stand for one to two minutes every 45 minutes during an eight-hour work day. In doing so, the ALJ rejected the opinion of Ms. Bereckis' treating doctor and largely accepted the opinions of the Agency doctors. However, the ALJ's reason for rejecting the opinion of claimant's treating doctor is flawed because that reasoning did not speak to the treater's opinion

---

[8] Ms. Bereckis testified that her activities of daily living included being able to shop for groceries, prepare simple meals, do laundry and dishes, drive short distances, and use a snowblower (R. 24-27). She testified that her ability to perform some of these and other activities often caused her to have a flare up in back pain, and required her to lie down for one to two hours during the day (R. 29-30).

6

as it related to Ms. Bereckis' ability to perform sedentary work, and the ALJ's acceptance of the Agency doctors' opinions is flawed because she failed to identify the medical evidence that supports them. Instead, the ALJ constructed an RFC different from that of both the treating and the Agency doctors without building a "logical bridge" from any of the medical evidence to her decision. *Clifford v. Apfel*, 227 F.3d 863, 970 (7th Cir. 2000) (If an ALJ rejects a treating doctor's opinion, he or she must rely on other medical evidence or authority in the record to determine a claimant's RFC).

The regulations provide that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." 20 C.F.R. § 404.1527, *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001), or when the treating physician's opinion is internally inconsistent, *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000), as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Id.* at 870. Further, when an ALJ declines to give a treating doctor's opinion controlling weight, he or she must still assign a weight to that opinion, taking into account such factors as "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 404.1527.

We recognize that the ALJ explained her decision to reject Dr. Labotka's opinion with citations to the medical evidence that Ms. Bereckis was able to achieve a certain level of pain control with medication, and that reports from some of her medical examinations concluded that

Ms. Bereckis' level of pain was related in part to overdoing various activities of daily living.[9] But the ALJ only discussed medical evidence related to Ms. Bereckis' ability to stand, walk, lift, and push; she did not explain how Ms. Bereckis' course of treatment relates to her ability to sit long enough to perform her job. And, in this case, it is Ms. Bereckis' ability to sit that is relevant to her RFC because the ALJ concluded that Ms. Bereckis retained the ability to perform her prior, sedentary work.

In rejecting Dr. Labotka's RFC opinion that Ms. Bereckis could only sit for less than an hour in an eight hour work day and needed to lie down intermittently for pain relief, the ALJ stated that, in her view, the course of treatment pursued by Dr. Labotka was not "consistent with what one would expect if the claimant were truly disabled" (R. 80). In coming to this conclusion, the ALJ stated that "there is no evidence of steroid injections or surgery" (*Id.*).[10] But an ALJ may not "play doctor" and reach her own independent medical conclusion about what sort of medical treatment is needed to show that a particular condition is disabling. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (Failure of doctors to prescribe insulin, without explanation why, was not sufficient for ALJ to conclude that claimant's diabetes was not disabling). Similarly, here, the ALJ impermissibly played doctor by presuming that Ms. Bereckis' course of treatment indicates that her back problems were non-severe and that she was able to work.

Furthermore, after ostensibly rejecting Dr. Labotka's opinion that Ms. Bereckis could only sit for less than an hour in an eight hour work day, the ALJ constructed an RFC that is much

---

[9] The ALJ's description of the amounts of medication Ms. Bereckis needed for pain control is inconsistent. The ALJ acknowledged the medical evidence that by 2014, Ms. Bereckis sometime needed to take the strong narcotic Norco three times per day to manage her pain, but that when cautioned about dependence, she agreed that on some days, she could manage with only one pill (R. 78, 1054). Elsewhere in the opinion, the ALJ relies on Ms. Bereckis' ability to sometimes manage with one pain pill as evidence that her back pain was not as severe as she claimed, despite concurrent evidence that Ms. Bereckis often needed to take more than one pill per day (R. 78).

[10] Elsewhere in her opinion, the ALJ recognizes that Ms. Bereckis underwent three prior surgeries. We presume that the ALJ's statement that there is no evidence of steroid injection or surgery refers to the time period after Ms. Bereckis' final spine surgery in 2010.

8

closer to Dr. Labotka's RFC opinion than to that of the two Agency doctors. But again, the ALJ does not explain what support she relied on for this RFC. Specifically, we do not know what medical evidence led the ALJ to state that a break from sitting would be needed after 45 minutes work (as opposed to earlier or later), or why a one-to-two minute break (and not a longer one) would suffice. Indeed, while the ALJ explains why she added additional restrictions to the Agency doctors' opinions with respect to Ms. Bereckis' ability to walk on uneven surfaces, and also why she rejected Ms. Bereckis' contention that her mental health issues also preclude her from working, the ALJ is silent on her reasons for the sit-stand option she added to the RFC.[11]

Adding to the problem is the fact that, while the ALJ's sit/stand option ostensibly credits Ms. Bereckis' testimony about her limitations in her ability to sit, the ALJ simultaneously states that she finds Ms. Bereckis not credible with respect to her complaints of back pain and how this pain limits her ability to work. As we note above, much of the ALJ's discrediting of Ms. Bereckis is related to the fact that she was admittedly able to perform a number of activities of daily living – including yard work – while simultaneously contending that she was unable to sit long enough to do her job. But, the ALJ failed to differentiate between evidence of Ms. Bereckis' sporadic back pain resulting from yard work and other activities, as opposed to the pain caused by prolonged sitting at a computer to work. It appears that the ALJ may have concluded that a claimant who could perform yardwork could not be disabled. However, in this context, an ALJ's

---

[11] The ALJ summarized a number of Ms. Bereckis' doctors' visits, but did not explain how any of the medical evidence does or does not support her conclusions. For example, the ALJ discusses Ms. Bereckis' consultative examination with Ravikiran Tamragouri, M.D., by acknowledging that she complained she could not sit for long periods of time, had residual effects from her surgery, and had severe pain, and that the doctor diagnosed lumbar spine disease and possible spina bifida (R. 77, 843-45). The ALJ also summarized Dr. Tamragouri's findings that Ms. Bereckis had normal range of motion in her extremities and cervical spine, although with some pain, and that her lumbar spine range of motion was compromised (*Id.*). But it is unclear from the ALJ's recitation of this and other summaries of Ms. Bereckis' various doctors' visits how any of the medical evidence supports or does not support Ms. Bereckis' ability to sit and work. *See Buettner v. Colvin*, 14 C 4389, 2016 WL 3476424 *5 (N.D. Ill. June 21, 2016) ("A summary of the facts is not an analysis and the ALJ failed to build a logical bridge from her summary of facts to her conclusion as to claimant's RFC").

use of what he or she finds to be "[c]ommon sense can mislead; lay intuitions about medical evidence are often wrong." *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990). Here, the ALJ points to no evidence that Ms. Bereckis' activities of daily living and light yardwork were either consistent, or inconsistent with the ability to perform sedentary work.

If Ms. Bereckis contended she could not perform, for example, work at the medium exertion level, then evidence of her ability to do yard work might bear on her credibility. But Ms. Bereckis' past relevant work, and the work the ALJ found she was still able to perform, was sedentary. Indeed, the ALJ recognized that Ms. Bereckis often stood during her medical exams, and also that she stood for part of the hearing. The ALJ does not point to any evidence that Ms. Bereckis' testimony about her pain from sitting was not credible. *See, Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014) (ALJ erred by discounting claimant's allegations of pain and need to lie down during the day because his reasons for doing so were flawed).

## CONCLUSION

For the foregoing reasons, we grant claimant's motion for summary judgment and remade the case (doc. # 16), and deny the Commissioner's motion for affirmance (doc. # 23). We remand the case for further proceedings consistent with this Memorandum Opinion and Order. The case is terminated.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: January 10, 2017**